SAB RAW, District Judge,
concurring:
I concur in the memorandum disposition. I write separately to highlight two matters that further explain the prosecutor’s testimony and why Luna is not entitled to habeas relief.
First, the prosecutor’s testimony was neither planned nor volunteered; rather, it arose in response to Detective Lowe’s unexpected disavowal of Alarcon’s statement that someone other than Luna and Picado, ie., “Wicked,” was seen with a gun around the time of the shooting. Seizing on the opportunity, Luna’s counsel made clear he would not stipulate that Alarcon mentioned “Wicked” had a gun: “I won’t stipulate those things were said. I’m going to call Mr. Enomoto to the stand.” That was a principled tactical decision, as testimony by Enomoto about “Wicked” would accentuate the potentially exculpatory evidence that “Wicked” was the other gunman, not Luna, and it would discredit Lowe’s testimony on that point. The prosecutor’s testimony was therefore not only invited, but essentially forced by Luna’s lawyer. See Darden v. Wainwright, 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (“the idea of ‘invited response’ is used not to excuse improper comments, but to determine their effect on the trial as a whole”).
Second, Alarcon’s pretrial identifications were objectively credible and consistent with all of the evidence. To start, Alar-con’s pretrial identification of Luna as the one who shot the “semi-automatic at the Black guys” was corroborated by the trial testimony of the surviving victim, who identified Luna as one of the shooters. The surviving victim also testified that Pi-cado shot him with a revolver. That testimony was consistent with Alarcon’s pretrial statement that Picado used a revolver during the shootings, including when he shot and killed one of the victims.
*943 Alarcon’s pretrial identifications also were inherently unequivocal, as he actually knew Luna- and Picado — they are “cousins or [related] by marriage” to Alarcon’s wife, knew the members of the gang from prior contacts, saw the shootings, and memorialized his identifications by documenting and signing the photographs of Luna and Pica-do. Detective Lowe testified to these facts after Alarcon recanted at trial. A gang expert further explained that witnesses in gang cases commonly recant due to threats. Thus, as the California Court of Appeal stated, Alarcon’s denial at trial of his earlier identification of Luna was “inherently unbelievable” under the circumstances.
Luna was at the party when the brawl broke out between his gang and the “Black guys.” That was undisputed. The evidence also established that Luna possessed the .380 caliber semi-automatic handgun that fired the rounds at the crowd. That gun was found at his feet, seven weeks after the shooting, and the prosecutor highlighted this fact during his rebuttal closing argument. The gun had four live rounds in it when recovered from Luna. The other two rounds — the gun having a six round capacity — were found expended at the crime scene as evidenced by discarded shell casings. Alarcon’s pretrial statement that Luna had the semiautomatic handgun that was fired at, but missed, “the Black guys,” was consistent with the ballistics evidence, which established that the shell casings recovered from the scene were fired from that gun and the bullets recovered from the victims did not come from that gun.
The jury made true findings consistent with that evidence, that Luna “personally and intentionally discharged a firearm” but did not hit anyone. The jury also credited the evidence that Picado shot at and hit his targets, finding Picado “personally and intentionally discharged a firearm and caused bodily harm or death.”
To establish Luna’s guilt the prosecution did not have to prove that Luna fired the fatal shots or even that he fired the shots that injured the other victim. Under the natural and probable consequences theory advanced by the State, the prosecutor only needed to establish that Luna committed one of the “target offenses,” and that murder or attempted murder was the natural and probable consequence of that offense. Under the natural and probable consequences theory, “an aider and abetter is guilty not only of the offense he or she intended to facilitate or encourage [ie., the target offense], but also any reasonably foreseeable offense committed by the person he or she aids and abets.” People v. Gonzales, 52 Cal.4th 254, 296, 128 Cal.Rptr.3d 417, 256 P.3d 543 (2011) (citing People v. Prettyman, 14 Cal.4th 248, 261, 58 Cal.Rptr.2d 827, 926 P.2d 1013 (1996)). The target offenses defined for the jury included assault with a firearm and negligent discharge of a firearm. Firing a gun at a group of people satisfies the target offenses of assault with a firearm and negligent discharge of a firearm, the natural and probable consequences of which are murder and attempted murder. Finally, the prosecution’s theory of liability was tied together by its gang expert, who testified that gang members usually are armed when they go out in a group and they defend each other. He testified that an argument of the kind that occurred in this case often escalates into a shooting where people are injured or killed. And that is exactly what happened.
The testimony of the gang expert, combined with the documentation of Alarcon’s pretrial identification of Luna and corroboration by Detective Lowe, the identification of Luna at trial by the surviving victim, the identification of Picado by the *944 surviving victim as the one who shot him with the revolver, the ballistics evidence, and the discovery of the .380 semi-automatic handgun used at the scene at Luna’s feet, was strong evidence of guilt. All of the evidence was consistent with, and corroborated, Alarcon’s pretrial identifications, which, standing alone, were solid given his prior knowledge of both shooters. In light of the evidence, I have no doubt as to the harmlessness of the prosecutor’s testimony in this case. I agree with the California Court of Appeal that the effect of the prosecutor’s testimony, when taken in context, was “negligible.” I therefore concur that, even, assuming, without decid-, ing, a violation of clearly established law, the prosecutor’s conduct did not have a “substantial and injurious effect” on the jury’s verdict. Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).